Our next case of the morning is Quintana v. Figueroa 410-0449 for the appellant, Mr. Thomas, for the appellee, Mr. Iden. You may proceed. Good morning. May it please the Court in opposing counsel, I'd like to first start off today with laying out what we believe the applicable standard of review in this matter is. In preparing my brief, I believed, looking at the facts before the trial courts, that there really wasn't an issue of material fact and dispute. And further reviewing that, I believe counsel has pointed out in their brief that there is a material, or they believe there's a material fact and dispute. And to that extent, we do believe that the applicable standard of review is manifest weight of the evidence, as the appellee suggests. We believe the crux of our argument, though, is that the court applied the wrong, or applied the law incorrectly to the facts before it. In that regard, we believe the applicable standard of review is a de novo review. At the trial court level, I believe that appellee's counsel did an excellent job explaining to the trial court Hewitt and related cases. I think the problem lies in that appellee herself did not buy into the theory that counsel was suggesting. And instead, the evidence, the actual evidence set forth before the trial court is what makes the trial court's ruling incorrect. At the trial court level, the appellant requested that the trial court impose a constructive trust based on a fiduciary relationship, exclusive from any conjugal relationship between he and the appellee. In doing that, the trial court was required to weigh three factors set forth in our argument in the applicable case law. The first factor, which really isn't relevant or applicable here, is the degree of kinship. The second, which we believe is in favor of Mr. Quintana, is the disparity in age, health, mental condition, education, and business experience. Here, we have the unequivocal testimony of both parties, and specifically Ms. Figueroa herself, who states that Mr. Quintana was not educated, did not go to school, did not speak English until she met him, and whatever English he did learn was taught by her. And most importantly, she proudly states that he relied exclusively on her to translate from English to Spanish all of his important financial dealings. The next factor is to the extent the alleged servant party entrusted the handling of his business and financial affairs to the dominant party and placed trust and confidence in that party. Here, again, we have Ms. Figueroa's proud testimony that he relied exclusively on her for all of his important financial dealings in translating from English to Spanish. That, in and of itself, I believe the trial court did not look at that, and that was inappropriate. And as much as it wasn't just a typical conjugal relationship that most, or a relationship that a conjugal relationship, a relationship between the parties to that extent, that would be common of a man and a woman living together and holding themselves out if they were married. That is one party who has all of the knowledge of the business that's being conducted between them. She testified that the loan documents and all other documents were in English. That's just not common to a conjugal relationship. Furthermore, other than the parties having children, which was kind of a, the case started out as a parentage case. Well, they went through a marriage ceremony, correct? That is correct. Why weren't they married? What's the defect in the so-called marriage? I'm not clear on that. I believe it's the way that the United States law would recognize the marriage that took place in Mexico, that there would be a two-step process in order for the United States, and specifically Illinois, to recognize that marriage. They were married in a church in Mexico. I believe they have to have the second component of the civil component for the state of Illinois to recognize the marriage. I'm not familiar with what you would be talking about. What was it that they would have needed to have registered in the state of Illinois? And with what office? I guess they would have had to register the marriage in the state of Illinois. With what kind of document? The Mexican government, in addition to having the church ceremony, would have to have the civil document from Mexico, where the Mexican government actually issues the marriage license, in addition to having the religious ceremony. That would have been needed in order for them to have their marriage recognized in the state of Illinois. It sounds like when a marriage takes place in Illinois, say by a minister, the minister forgets to file the license with the county clerk. Are they not married then because the minister failed to file the license? I think it's supposed to be done within, I can't recall, maybe it's a week, 10 days, something like that. I don't think they would not be married then. I don't think you'd have trouble establishing the marriage without the license being registered or having an actual license appropriately issued and executed. Here they didn't have the necessary documentation from Mexico established. They never even got to that part of that component. So you're not arguing this court in any fashion in that they indeed were married, in spite of these shortcomings of filing documentation in Mexico or in the state of Illinois? I believe the law would support such an argument, so no, I'm not making that argument. Okay. Kind of tied in again to the request for constructive trust, we believe that we proved that there was a breach of fiduciary duty. The trial court did recognize that in order, and we believe the applicable law is, that in order for a fiduciary relationship to be actionable, it must be accompanied by undue influence. Here perhaps is where I overlooked in my brief, and the applicable standard of review would be a manifest way of the evidence. To the extent that the trial court found the type of fiduciary relationship that was present, the trial court said it was basically the same relationship enjoyed by most couples in a conjugal relationship. Here, and as we previously argued, we believe that that finding is unreasonable and not based on the evidence before the trial court. The trial court kind of holds that all that was present before it was evidence of a marriage-type relationship, and Mr. Quintana was simply asking for his marital share of the residence, and that wasn't really the case. The case that was put forth by Mr. Quintana was that he paid for, and established that he paid for at least one-half of the consideration. Do you think we should ignore Ayala, or do you think it's distinguishable, and if it's distinguishable other than the language barrier, how is it distinguishable? It's distinguishable other than just the language barrier, because there was no evidence beyond the language barrier that she believed that she was apprising him of everything that was fair. That she translated those documents and said, now if this house is titled in my name alone, you understand you don't have an interest in it. We're not married. These loan documents, all these documents that we're doing to establish here, are going to establish that I own the house. Well, but that's sort of like proving a negative. In Ayala, there's proof that there was payment, plus taxes and insurance, plus a promise that I'll transfer title into joint ownership. And yet, we said, you know, harsh result, but that's the law. It seems to me like Ayala is even stronger for the individual who's effectively disenfranchised of what they thought might be some property rights than your case. Am I misunderstanding? No, I think that's a correct holding in the facts that were before Ayala's, before that court. Here, though, I guess taking away the fact that there was a language barrier, we not only had the language barrier, but her testimony that she was the only go-through for all of his financial dealings. Well, isn't there evidence in the record that there were other things that he took care of himself? There's evidence, I believe, in the record that he took his taxes to be prepared. I can't recall the time ahead of any other thing that he handled on his own. Perhaps he bought a motor vehicle or something along those lines. But the big issues there that they did, she testified, responded, testified that she was the person to handle those affairs, that he relied on her to do so. I think taking away, just classifying it as a language barrier is one part of it. The next is a language barrier where the person is handling all the financial affairs of the partnership. I think, and I don't know if it's before this court in either of my briefs, but one of the arguments made at the trial court level, and I think is applicable, since we didn't have, we had very little evidence when we got to this phase of the trial that it was a conjugal relationship or there were sexual relations involved between the parties. Primarily it was what was their arrangement or what was their partnership. And in that regard, I think if you had two men, heterosexual men living together, and they had a partnership, whether it was going to buy a building or a business or something along those lines, to where one party was American English speaking and the other party was from another country and didn't speak English, but they could communicate amongst themselves and the non-American or non-English speaking person trusts that person to handle all their financial affairs, to handle all their financial dealings. And the American English speaking person ends up titling everything in their name, doing all the financial translation of the documents. I think that here the trial court said that they would find that there was a breach of fiduciary relationship and undue influence over the party, but because there was this relationship between Mr. Quintana and Ms. Figueroa where they had children and at least one point in time were in a marital type relationship where they had children in a common home together, that that would prevent or prohibit, he would prohibit granting any relief to them as a form of punishment. I don't think that that should be the holding, especially with the dynamics of our country as it is today. I think that sets up a dangerous precedent and it's establishing that you can't take in between a man and woman if you can prove that there was some sort of relationship, no matter how distant, if you have the undue influence and a breach of the duty that you owe to them as a fellow human being, that you can rest on that relationship no matter how distant to bar any relief. I don't think that's the holding in Hewitt or the cases that followed it, and I think that's why they carved out those exceptions, maybe with some foresight, to prevent that. I understand the public policy of the state of Illinois is to protect the sanctity of marriage and specifically at the time these cases were held, the rulings were issued in those cases, but I don't think it was to be so firm to bar any sort of relief when you especially establish the fiduciary relationship, the breach of that, and you go through not just saying we live together as husband and wife, I want half of what's fair because I contributed, half to make that relationship work while those assets are being accumulated, you establish that you paid for at least half of it, and that's what was here and present in this case, and that's why we believe the trial court's ruling was incorrect in that regard. I think reading the opinion, the judge fought based on fairness in the evidence that he wanted to do what seemed to be right, but that Hewitt was barring him from doing that, and I don't think that's the correct analysis of those cases, especially on those facts. With that, I'm going to ask this court to respectfully reverse the trial court's ruling and grant the relief requested. Thank you, counsel. With your leave, Your Honor. First, I would like to discuss the question that you had brought up, Your Honor, just to clarify that. In testimony, she had testified that they never actually even filed for a marriage license, so it was not legal in Mexico, and as it wasn't legal in Mexico, it wasn't legal in the U.S. And on page 13 of his brief, he admitted that that was no longer an issue. I just wanted to get that out of the way, Your Honor. Basically, what we have here is, regardless of his statements regarding the fiduciary duty, you're still bound by the terms of Hewitt and his progeny. Hewitt had stated that between parties that are in a conjugal relationship, there is no right to equitable relief because it was the public policy of the state of Illinois to encourage and strengthen the integrity of marriage. And because of that, they thought that using a piece of equity would weaken that integrity and would not be something that we would want to go forward through. Or if it did, it was something that the legislature was the one responsible for making those changes. In his brief, he had talked about the fact that there's no evidence of sexual illicit relationship, but it was Hewitt, in fact, that moved beyond that. The Hewitt court case talked about the fact that previous cases had relied on meretricious exchange. And they said that's not what you should be looking at. You should be looking at what is the basis for the relationship, and is that relationship that is in place of a marriage, regardless of the sexual anything. If it's a relationship that's in place of a marriage, it's a common law marriage, and based on both the ruling that there's no legal common law marriage from 1905 and the IMDMA, that that is not something that we should recognize and not something that we should give equitable relief to. In his discussion, he had talked about the two people who buy a building. That is not what we're talking about here. If the two people are buying a building, that is an arm's length transaction. It is not this is a house that we and my family are going to be living in. That's what the central question is. What is the relationship, and what is the property? Mr. Eisen, the trial court said that they, the trial court believed Mr. Thomas' client, and that he had contributed 50% of the cost of the marital residence. Yes. He's impaired as far as his language skills. Is your client a Native American citizen, or is she a Mexican American? She was born in California and then moved to Mexico. She was raised in California, so she does have more ability in that area. The problem with that is, one, I think all of the progeny talk about the fact that contribution doesn't matter. But if he thought his name was going on the house, was there evidence before the trial court that it was explained to him his name was not on the house? No, there was no evidence to that effect. In fact, one thing I was going to point out is there's no evidence anywhere of a breach. If there's a claim of fiduciary duty, there's no evidence of a breach, and we can't assume because his name wasn't on the title that that was a breach of any fiduciary duty. There's testimony throughout that his name was on all the vehicles. His name alone? Huh? His name alone on all the vehicles? His name alone. And, in fact, if he had not stated in open court that he was allowing her to have one of the vehicles, because all the vehicles were always titled only in his name, if he had not stated that in open court, she would not have been entitled to that vehicle because under those cases it's titled in his name. Did Ms. Figueroa drive? Yes. It was her car. It had been her car for several years. And it would have been even more inequitable in the situation with him because she was given custody of the children. She wouldn't have had any way to take them anywhere. She wouldn't have had any way to go to her job. How can you distinguish Spafford? Spafford versus Coates. Explain that to me. Well, first of all, as I said in my brief, I think Spafford was wrongfully decided. But despite that, she was the owner. She was not a half owner. She paid for the entirety of the first vehicle and paid almost all for the other vehicles. And, again, wrongfully they decided that, in wrongfully my opinion about it, that since she was the total owner, the true owner, it would be completely unfair to allow someone who had no ownership interest or de minimis ownership interest in these vehicles to be allowed to essentially steal them from her because of the way they were titled. Okay. So how is that different where he pays? The court finds he paid 50%. Yes. And the court in IAEA found that she paid more than 50%, that she paid more than half of both the mortgage and the insurance and the taxes. She had more invested in this home. And not only that, unlike in this case where he was never on any of the loans, he was never actually responsible for paying. He did pay them, but he had no responsibility. Ms. Ayala was the only one on the loans. She had the duty to pay it. It had actually gone back to the financing company and he had given it up in Deed and Lou, and they still could have gone after her even though she didn't have the property. Ms. Ayala wasn't wrongly decided. They're both appellate court cases, right? Because Ayala followed Hewitt and Spafford did not. Ayala followed the Supreme Court precedent and Spafford decided to go off on its own tangent. See, to me, when I read Hewitt, the impression I get is that the Supreme Court was saying, we're not going to have people coming into court because of this similar marital relationship and asking for maintenance and asking for a division of the property. But I think you can make an argument, and I assume this is Mr. Thomas's argument, when you can actually prove that you contributed financially, irrespective of this non-marital relationship or the conjugal relationship or whatever you want to call it, then you have a chance at least to make the claim because it's not based solely on a marital type relationship. It's based on actual financial contribution. The problem with that is that it is based on the relationship. He would not have paid anything for this house if it were not for his relationship. You can't say that that's independent. It has to be independent of the relationship. For instance, in one of the cases he quoted in Broad, the fact is before they even moved in together, they worked together this plan where they were going to buy property and they were intent of buying it to improve it and then sell it for money. And then after they moved in together and then broke up apart, this semi-arms-length transaction fell apart and that's why they granted relief in that one because it was not because they're living there as a... He would have no duty at all to pay for that house if it weren't for the fact he was in a conjugal relationship that that was his family. He would not have done it. There was no duty for him to pay that. There was no responsibility for him to pay that and he would not have paid it absent the fact that he was in a relationship with Miss Figueroa. Is Mr. Thomas' argument, did the trial judge say if these were two heterosexual people who weren't involved in a conjugal relationship and under the same baths, I would give relief to the person whose name was not on the title? What he said was he didn't think it was fair, but that in reading Hewitt and Ayala, he said that that's the decision that has to be done under the law. That's what he said. And I think both in Hewitt and in Costa, it has to be acknowledged that both courts said this is an area of the law that the legislature needs to be making the changes. And while there's talk, especially the judge pointed out, that some of the things have been changed, I think it needs to be especially noted that December 17th, Illinois Religious Freedom Protection and Civil Union Act allowed a secondary means. They have acted directly in the area of this. They have said specifically, here, if you enter a civil union, you will be entitled to the same property rights that someone with marriage. Mr. Quintana would be in the same exact position. His position has not changed. Even if this act were in place when all this happened, he is still common law marriage. He would still be entitled to nothing under Hewitt and the Project. And you can't have had the legislature more involved in the central issue than they were in the creation of the Civil Union Act. Yet they did nothing to change Hewitt. They did nothing to give non-married couples that don't enter into a state-recognized union any rights. And that's still the case. It's still good law, even as soon as that goes into effect. Because you still have to be in a state-recognized institution, whether it's a civil union or a marriage. That is still the requirement. And if you are not, and you don't do something independent of the fact that there is a marriage, if you do not enter into a contract or get your name on the title or do something else that the law can recognize, then you are not going to be allowed to have equitable relief. Kind of going back to the one problem, even with his fiduciary claim, is first of all, his own client and his own witnesses talked about multiple times that he did his own work. She had nothing to do with the sale of the Oak Street property. She had nothing to do with arranging any of the repairs to the Taylor Street property. He handled all that by himself. So he was capable of doing his own work. And how did his name get on the title to the Lafayette property if he didn't aware that his name had to be on the title of the property? Why wasn't his name put on the Taylor Street property? Was there any testimony? No, there was no testimony at all. One way or the other. The only testimony was Ms. Figueroa said it's my property. But she didn't say I refused. She also said she paid $27,000 out on the property and she only earned $29,000. The judge found her not credible, specifically. Yes. But that doesn't change the fact that it was in a relationship, it was a conjugal relationship, and under Hewitt and Ayala and Costa, the court must follow the precedent and find that she's entitled to it. And Costa specifically, that's the one I also want to go through. Because in that one, Mr. Costa was essentially a house husband. He put everything he had into the house. She was in charge of everything. She handled all matters. He didn't have any input. She could do whatever she wanted. Ms. Sullivan could do whatever she wanted. She put her name on all the properties. She put her name on all documents. And he was not allowed to be involved. And the court said, this is a harsh result. It's unfair. And the Costa court said, we have to follow Hewitt. It doesn't matter. It's exactly the same argument that he's making. Exactly. The fiduciary relationship, it was unfair to me, because this person controlled all of the finances. And yet, the Costa court, only four and a half years ago, decided that Hewitt was still active, that Hewitt was still viable, and that they had to follow it, no matter how unjust, really, it turned out to be. Because that was public policy of the state of Illinois, and until the legislature did something about it, it was not the duty of the courts to take any measure about that. Any further? No further questions. Thank you. Yes. The other, the final thing, as to the fiduciary duty, is both of the cases that he quoted, Broad and Kaiser pointed out the fact that you do not need to just establish fiduciary duty, you need to establish a breach by clearing convincing evidence.    if I may, if I may, if I may, if I may, if I may, found any evidence of any breach, except by supposition and assumption, there's definitely no testimony. How about not putting his name on the title? But he put his name on the cars. He put his name on the, the Lafayette property. You can't assume, because that would be an assumption. There's no testimony that he was denied, that it was unfair, or that she took advantage of the situation, when he knows, he's clearly established, he knows how to get his name on titles. And he knows that that means ownership. So I think it would be, especially considering the fact that it's clear and convincing, it's not preponderance of the evidence, I think that clearly establishes that he knew what he was, he knew what was going on, he knew how to correct the situation, and we shouldn't assume for him, and allow that to become clear and convincing, that there was any breach to that fiduciary duty. If that's, again I do not believe that fiduciary duty should even come into it, based on Costa and Hewitt, but that would be the case under these circumstances. Thank you. Rebuttal? I think one of the central issues, is whether going into this trial, that Mr. Quintana knew the law, and what established title and ownership, and he was obviously incorrect. And what Ms. Figueroa, at least tried to present, that she, I think it's evident on the record, that she believed she was going to be victorious, not based on the Hewitt case, but that she paid for it. And that's why she, no matter what evidence was presented before her, including signed copies of the text, that she still paid for everything, because she thought that established that she owned it. Mr. Quintana, as Mr. Iden indicates, maybe to his detriment, said that she owned half of those vehicles, not because his name was on the title, but because she paid for half of them. He acknowledged that. And one of the key things here, is that there was no evidence of a civil relationship, beyond the fact that they had children together. The crux of the time period, is from perhaps 2000 to 2009, when the case was heard. The only evidence before the trial court, that could be supposed about a civil relationship, was that Ms. Figueroa married midterm during the hearing, during the phase of the trial. She became Ms. Tippie. There was no evidence that Mr. Quintana or Ms. Figueroa, was contributing more to the children, and therefore deserved more of the property, because everyone had a loss in earning income. Rather, the perhaps unique facts here, they both worked at the same place, and this was established, they both made the same amount of money established, and that Mr. Quintana, through direct evidence presented, he paid one half for the property. I can't say that whether the record reflects that Mr. Quintana, had an exclusive ownership of the Lafayette property or not. I don't recall that. I don't want to represent to the court, that that wasn't testified to. But even then, they continued to use the assets, that were accumulated in their partnership, to move on to the next asset. It just happened to be that when Ms. Figueroa, didn't want to be in the partnership anymore, that she ended up having the house title solely in her name, and that's why she believes that she should get it all, beyond not having the civil relationship, or the marital type relationship, being established before the court. Furthermore, saying that he handled all of his affairs, as contrary to Ms. Figueroa's, or he could handle his affairs himself, as contrary to what Ms. Figueroa testified to. She testified that she's the one that procured the goods, for the repairs to the residence. He may have went and ordered it, but she's the one that paid for it, she's the one that picked it out, it was her house that was going into it, that was her testimony. Not that Mr. Quintana had anything to do with it. We believe overall the trial court had a way, not just whether she was testifying credibly, about the payments on the house, but overall the credibility of the evidence presented. And in so doing that, in considering Mr. Quintana's testimony, that they mutually went with the realtor, to pick out the house, but Ms. Figueroa was more fluent in English, and went to the bank and secured the loan, and everything else in her name, and then subsequently they paid for half, I think that establishes, that there is an exception to Hewitt, and that this court again should, award him the relief that he's requested. Thank you counsel, I take the matter under advice.